**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

CATHERINE M. PIERCE and CINDY STORLIE, legal and natural guardian to minor, A.LS.,

Plaintiffs,

vs.

RAINBOW FOODS GROUP, INC., a Nevada corporation, d/b/a Rainbow Foods, and JOHN ALBERT MARTINSON,

Defendants.

Civil No. 00-1817 DDA/FLN

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

---

Nichols, Kaster & Anderson, by PAUL J. LUKAS, Minneapolis, Minnesota, appeared on behalf of Plaintiffs.

Rider, Bennett, Egan & Arundel, LLP, by JOHN D. THOMPSON, Minneapolis, Minnesota, appeared on behalf of Defendant Rainbow Foods Group, Inc.

William J. Egan, PLC, by WILLIAM J. EGAN, Edina, Minnesota, appeared on behalf of Defendant John Martinson.

---

Plaintiffs Catherine Pierce ("Pierce") and A.L.S. ("Storlie") are former employees of Defendant Rainbow Foods Group, Inc. ("Rainbow"). Pierce and Storlie claim that Rainbow is liable to them under federal and state antidiscrimination statutes for sexual harassment committed by another former Rainbow employee, Defendant John Martinson ("Martinson"). Pierce and Storlie also assert common law claims for negligent hiring and negligent retention against Rainbow and for assault and battery against Martinson individually. Both Rainbow and Martinson have moved for summary judgment, which is appropriate if no genuine issue of material fact exists and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Rainbow argues that Pierce's statutory claims are time barred and, in any event, that neither Pierce nor Storlie has shown facts sufficient to support a finding of sexual harassment. Rainbow also argues that the Minnesota Human Rights Act ("MHRA") preempts the Plaintiffs' negligent retention and negligent supervision claims.

FILED AUG 20 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

Finally, Martinson argues that neither Pierce nor Storlie has presented evidence sufficient to support a claim for assault or battery under Minnesota law. For the reasons stated in this Order, the Court will grant Rainbow's motion in part and will dismiss the negligent retention and negligent supervision claims as preempted by the MHRA. The court will deny Rainbow's motion with respect to the remaining issues and will deny Martinson's motion in its entirety.

I.

Rainbow hired Martinson in June 1995 to work in the produce department in its grocery store in Burnsville, Minnesota. Over the next several months, a number of female employees complained to Rainbow management about Martinson's conduct. Martinson received a verbal warning in February 1996 for making unsolicited romantic advances to two different female employees, both of whom eventually complained to the general manager of the Burnsville store, Greg Fieock. Martinson received another verbal warning from Fieock in June 1996 for attempting to "set up" a female employee with Martinson's son. In November 1996, Martinson received a written reprimand in response to more complaints indicating that Martinson was "asking younger female cashiers for rides and for dates." (Lukas Affidavit Exhibit 4).

Pierce began working in the bakery of the Burnsville Rainbow store in June 1997. Pierce's introduction to Martinson occurred about two months later, when Martinson came up to her and told her that her "ass was the nicest view he's had all day." (Pierce depo. at 15). Pierce reported this incident to her immediate supervisor, who in turn reported it to Fieock. Fieock then met with Pierce and told her that she was not the first person to complain about Martinson. Fieock assured Pierce that he would warn Martinson and that Martinson would be terminated if his harassment of Pierce persisted. Fieock then took medical leave, however, and Martinson continued to behave inappropriately toward Pierce. Martinson often would grab Pierce from behind in an attempt to frighten her, would eat bakery doughnuts in Pierce's work area in what Pierce described as "a sexual way" (Pierce depo. at 17), and would follow Pierce through the store. On one occasion, Martinson lifted Pierce off the ground and held her arms pinned so that she could not move for several seconds. On another occasion, Martinson walked into a freezer

where Pierce was working alone, shut the door, and told Pierce that "it's soundproof in here, nobody can hear you scream." (Pierce depo. at 29). Pierce's recollection of the dates of these incidents is not entirely clear but, viewing her testimony in the light most favorable to her, the incident in which she was held and the incident in the freezer occurred in the summer of 1999 or after. Although Martinson never threatened Pierce directly, Pierce testified that she was afraid of him. Pierce attempted to avoid Martinson whenever possible, even going so far as to hide from him and to have other employees keep watch for her. Rainbow did not respond to Pierce's requests for a transfer to another area of the store, and Rainbow took no further disciplinary action against Martinson despite Pierce's additional complaints about him to her supervisors. Pierce alleges that she quit her job at Rainbow in January 2000 after Rainbow refused to adjust her schedule to allow her to work only when Martinson was not working.

Martinson also paid inappropriate attention to Storlie, who began working as a cashier at the Burnsville Rainbow store in September 1999. Martinson occasionally approached Storlie from behind in an attempt to startle her, as he did with Pierce, and Martinson often asked Storlie to hug him when she was leaving work. On May 20, 2000, after Storlie announced she would soon be leaving Rainbow to take a different summer job, Martinson cornered Storlie when she was alone in a hallway and asked her to kiss him. Storlie refused, but Martinson would not allow Storlie to leave and moved closer to her. According to a statement Storlie later gave to the Burnsville Police Department,

> He then started to lean down toward me[.] I turned my head to the right and crossed my arms over my chest. I was very uncomfortable with the situation and fearful of what he might do. When he came toward me he hugged me and placed his left hand on my waist and his right hand on my butt. He left his hand on my butt for at least 10 seconds. I didn't know what I should do.

(Lukas Affidavit Exhibit 7). Martinson let Storlie go after kissing her. Storlie did not return to Rainbow for her remaining shifts. Rainbow terminated Martinson's employment, and Martinson pled guilty to a misdemeanor disorderly conduct charge, based on this incident.

II.

Pierce's and Storlie's claims for sexual harassment are predicated upon the MHRA, Minn.Stat. § 363, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. A plaintiff claiming an unfair discriminatory practice under the MHRA must file a lawsuit or an administrative charge "within one year after the occurrence of the practice." Minn.Stat. § 363.06 Subd. 3. A plaintiff under Title VII must file an administrative charge within three hundred days of the alleged discriminatory practice. 42 U.S.C. § 2000e-5(e). Pierce filed her Complaint alleging an MHRA violation on June 21, 2000, and filed her Title VII charge on July 11, 2000.

As Rainbow points out, Pierce's testimony concerning the timing of specific events is inconsistent and could be construed in such a way that none of the events described above took place within the statutory limitations periods. Viewing the evidence in the light most favorable to Pierce, however, some of these events could have taken place within the limitations periods[1]. Even if they did not, Pierce did not specify dates for all of the complaints she made to Rainbow managers or for the types of conduct Pierce testified were continuing, such as Martinson following her through the store. At least some of those complaints or incidents could have taken place up to the time Pierce left her job in January 2000, which would make both the MHRA claim and the Title VII claim timely. Given the record's lack of clarity on these questions, Rainbow has not met its burden of showing that no genuine issue of material fact exists concerning the statutes of limitations applicable to Pierce's statutory claims.

III.

The record does not lack clarity, however, with respect to the details of Martinson's conduct. Pierce and Storlie assert that this conduct created a hostile work environment

---

[1] Rainbow argues that Pierce's inconsistent statements in her deposition cannot create a genuine issue of material fact. Minnesota courts, however, have recognized that a party's inconsistent statements may create a fact issue when those statements are the result of the party's "confusion or mistake," Hoover v. Norwest Private Mortgage Banking, No. C8-99-1281, 2001 WL 811041, at *11 n.4 (Minn. Jul. 21, 2001), rather than a self-serving attempt to contradict the party's earlier testimony.

actionable as sexual harassment under Title VII and the MHRA. Rainbow argues that the statutory claims fail for both Plaintiffs because the conduct Pierce and Storlie allege does not constitute sexual harassment as a matter of law.

The factual predicates for a hostile environment sexual harassment claim are similar under federal and state law. A plaintiff may maintain a claim under Title VII if the alleged harassment is both subjectively and objectively offensive and if it is severe or pervasive enough to alter the conditions of the plaintiff's employment. Moring v. Arkansas Dept. of Correction, 243 F.3d 452, 455-56 (8th Cir. 2001). The MHRA more specifically, and to some extent more broadly, defines sexual harassment as including "unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature when ... that conduct or communication has the purpose or effect of substantially interfering with an individual's employment." Minn.Stat. § 363.01 Subd. 41.

Despite Rainbow's effort to characterize Martinson's conduct as merely loutish and annoying rather than hostile and offensive, the conduct Pierce describes easily fits within the applicable definitions of sexual harassment. Pierce endured a number of unwelcome encounters with Martinson, including encounters involving physical contact, and Martinson's comments to Pierce along with his other behavior support inferences that Martinson's actions were sexually motivated and offensive to a reasonable person. Martinson's conduct interfered with Pierce's work to such an extent that she submitted multiple complaints to her managers, requested transfers and schedule changes, and enlisted other Rainbow employees to aid her in avoiding him. Evaluating whether particular conduct amounts to sexual harassment ultimately is a question for the finder of fact, Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1109 (8th Cir. 1998), and this record could support a finding that Pierce was sexually harassed within the meaning of Title VII and the MHRA.

With respect to Storlie, Rainbow emphasizes that Storlie complains of a single incident and that an isolated instance of inappropriate conduct typically will not amount to sexual

harassment. Martinson's action toward Storlie, however, was not simply a lewd comment, as in Clark County Sch. Dist. v. Breeden, __ U.S. __, 121 S.Ct. 1508, 1508 (2001) (per curiam), or a suggestive dinner invitation, as in Clearwater v. Indep. Sch. Dist. No. 166, 231 F.3d 1122, 1125 (8th Cir. 2000). Martinson found Storlie alone, limited her ability to leave the area, and forcibly kissed and touched her in an intimate manner. Because Martinson's conduct involved "the unwanted touching or groping of a victim's intimate body parts," Grozdanich v. Leisure Hills Health Ctr., Inc., 25 F.Supp.2d 953, 970 (D.Minn. 1998), a jury could find that Storlie was sexually harassed on the basis of this incident alone. Martinson's other conduct toward Storlie, including his repeated requests for hugs and other physical contact, provide additional support for such a finding.

IV.

The record also supports the common law claims Pierce and Storlie have asserted against Martinson. Pierce and Storlie allege that Martinson individually committed assault and battery against them as defined under Minnesota law. A battery claim requires a showing of offensive or harmful contact along with the defendant's intent to cause such contact. Essex Ins. Co. v. Davidson, 248 F.3d 716, 718 (8th Cir. 2001) (citing Johnson v. Morris, 453 N.W.2d 31, 40 (Minn. 1990)). An assault claim requires a showing that the defendant threatened bodily harm to the plaintiff and had the present ability to carry out the threat. Adewale v. Whalen, 21 F.Supp.2d 1006, 1016 (D.Minn. 1998) (citing Dahlin v. Foster, 288 N.W. 851, 852 (Minn. 1939)). Martinson clearly engaged in offensive contact with both Pierce and Storlie and had the intention to do so. A jury could find as well that Martinson's shutting Pierce in the freezer and confining Storlie in the hallway, coupled with Martinson's statements on those occasions, constituted credible threats of bodily harm sufficient to support a claim for assault.

V.

Pierce and Storlie also assert common law claims for negligent retention and negligent supervision against Rainbow, and determining whether the MHRA preempts those claims presents a more difficult problem. The MHRA includes an exclusivity of remedies provision,

Minn.Stat. § 363.11, and Rainbow argues on these facts that Pierce and Storlie may not pursue MHRA claims and common law negligence claims against it simultaneously. Decisions construing the exclusivity provision of the MHRA in the Minnesota courts and in this District do not give clear or consistent guidance on this issue.

The Minnesota Supreme Court first considered the scope of MHRA preemption of common law tort remedies in a case involving a claim for battery. Wirig v. Kinney Shoe Corp., 461 N.W.2d 374 (Minn. 1990). Wirig held that the MHRA does not preempt a claim for common law battery, even if the battery claim arises from the same operative facts as an MHRA claim, because the MHRA's purpose of eliminating discrimination is unrelated to the redress of injuries from harmful physical contact. Id. at 377-79. After Wirig, however, the Minnesota Court of Appeals reached arguably inconsistent results in applying MHRA preemption to claims of negligent retention and negligent supervision. Compare Wise v. Digital Equip. Corp., No. C9-94-461, 1994 WL 664973, at *2 (Minn.Ct.App. Nov. 29, 1994) (holding that the MHRA preempts a negligent supervision claim arising from the same facts as a sexual harassment claim because the duty of an employer to remedy sexual harassment arises from the MHRA and did not exist at common law) (unpublished opinion), review denied (Minn. Jan. 25, 1995) with Huffman v. Pepsi-Cola Bottling Co. of Minneapolis and St. Paul, No. C7-94-2404, 1995 WL 434467, at *5 (Minn.Ct.App. Jul. 25, 1995) (holding that negligent retention and negligent supervision claims fall outside the scope of MHRA preemption when the case involves allegations of threats of physical violence against a plaintiff claiming sexual harassment) (unpublished opinion), review dismissed (Minn. Sept. 20, 1995). In light of the unsettled state of the law after those decisions, one judge in this District declined to dismiss negligent retention and negligent supervision claims against an employer on the ground of MHRA preemption. Mandy v. Minnesota Mining and Mfg., 940 F.Supp. 1463, 1473 (D.Minn. 1996).

The law, unfortunately, did not become more settled after Mandy. The Minnesota Supreme Court since has held that the MHRA preempts a statutory whistleblower claim when the MHRA claim and the whistleblower claim are predicated upon identical facts and relate to

the same alleged injury. Williams v. St. Paul Ramsey Med. Ctr., Inc., 551 N.W.2d 483, 485 (Minn. 1996). The Minnesota Supreme Court shortly thereafter held that the MHRA did not preempt a disabled person's common law negligence claim against an airline because the airline's common law duty to aid disabled passengers in avoiding foreseeable physical injury was distinct from the airline's statutory duty not to discriminate on the basis of disability. Vaughn v. Northwest Airlines, Inc., 558 N.W.2d 736, 745 (Minn. 1997). Vaughn, unlike Williams, expressly rejected the argument that the MHRA preempts all claims arising from facts supporting an MHRA violation. 558 N.W.2d at 745. The Minnesota Court of Appeals nevertheless later relied on Williams in holding that the MHRA preempted a negligent supervision claim that was factually indistinguishable from an MHRA claim. Sullivan v. Spot Weld, Inc., 560 N.W.2d 712, 717 (Minn.Ct.App.), review denied (Minn. Apr. 24, 1997). The lack of a consistent analytical framework emerging from Minnesota case law led to a second case in this District declining to dismiss negligent retention and negligent supervision claims on the ground of MHRA preemption. Thompson v. Olsten Kimberly Qualitycare, Inc., 980 F.Supp. 1035, 1040 (D.Minn. 1997).

Subsequent cases in this District grapple with MHRA preemption more directly, but the analyses in those cases are not in accord[2]. One approach reads Vaughn as requiring MHRA preemption of negligent retention and negligent supervision claims in sexual harassment cases because an employer's duty to prevent sexual harassment under the MHRA is indistinguishable from its duty under the common law to protect its employees from harm. McKenzie v. Lunds, Inc., 63 F.Supp.2d 986, 1006-07 (D.Minn. 1999); Moss v. Advance Circuits, Inc., 981 F.Supp.

---

[2] Commentators, like the courts, also have found little common ground for agreement. See Richard A. Ross, How Exclusive is the Exclusivity Provision of the Minnesota Human Rights Act?, 27 Wm. Mitchell L. Rev. 1063, 1080 (2000) (arguing that the MHRA should preempt all common law claims arising out of the same facts as a MHRA violation); Timothy P. Glynn, The Limited Viability of Negligent Supervision, Retention, Hiring, and Infliction of Emotional Distress Claims in Employment Discrimination Cases in Minnesota, 24 Wm. Mitchell L. Rev. 581, 624 (1998) (arguing that the MHRA does not preempt negligent retention and negligent supervision claims because those claims are predicated on a duty of care independent of the MHRA).

1239, 1252 (D.Minn. 1997). A second follows Williams and Sullivan and holds that the MHRA preempts common law claims arising from the same facts as a MHRA violation. Breitenfeldt v. Long Prairie Packing Co., Inc., 48 F.Supp.2d 1170, 1180 (D.Minn. 1999). A third, more cautious, approach holds that an employer's statutory and common law duties to protect its employees merge when the employer receives notice of sexual harassment against an employee, so the MHRA does not preempt negligence claims against an employer based on facts occurring prior to such notice. Grozdanich v. Leisure Hills Health Ctr., Inc., 25 F.Supp.2d 953, 981-82 (D.Minn. 1998). A fourth approach, expressly contrary to Moss, holds that the MHRA does not preempt negligent retention and negligent supervision claims because the employer's statutory duty to prevent discrimination is distinct from its common law duty to protect its employees from physical injury. Cook v. Domino's Pizza, LLC, No. CIV01500RHKJMM, 2001 WL 821952, at *3 (D.Minn. July 17, 2001).

The parties agree that Vaughn represents the most authoritative statement of the law and that the preemption question turns upon whether Rainbow's common law and statutory duties toward Pierce and Storlie are the same. See Hoover v. Norwest Private Mortgage Banking, 605 N.W.2d 757, 767 (Minn.Ct.App. 2000) (noting that MHRA preemption applies to a claim for negligent supervision unless the duty supporting the negligent supervision claim exists apart from the MHRA), rev'd on other grounds, No. C8-99-1281, 2001 WL 811041 (Minn. Jul. 21, 2001). An abstract analysis of legal duties, however, does little to establish a concrete rule, as the foregoing discussion demonstrates.

Uncertainty in this prevalent area of employment law is unsettling for litigants and for practicing attorneys. It is unfortunate that the outcome of a claim may be determined by the random assignment of the case to a particular judge. The difficulties inherent in this uncertainty can best be resolved by the Minnesota Supreme Court providing definitive guidance on the issue of MHRA preemption of state common law claims. In the meantime, this Court holds in light of Williams and Vaughn that the MHRA preempts a common law cause of action if (1) the factual basis and injuries supporting the common law claim also would establish a violation of the

MHRA, and (2) the obligations the defendant owes to the plaintiff, as a practical matter, are the same under both the common law and the MHRA.

The MHRA preempts the Plaintiffs' negligent retention and negligent supervision claims against Rainbow under that standard. Pierce and Storlie rely upon the same incidents of sexual harassment to establish liability under the MHRA and the common law, and their alleged injuries resulting from the sexual harassment are the same for the MHRA and common law claims. Although the common law claims, unlike the statutory claims, require a finding of a threat of physical injury to the plaintiff, McKenzie, 63 F.Supp.2d at 1005-06, the weight of authority suggests that an act of sexual harassment in itself may be sufficient to support such a finding. Id. (citing cases). Rainbow's obligations under the MHRA and the common law, then, as a practical matter are the same. An employer has a common law duty to protect its employees from unreasonable risks of physical harm and a statutory duty to prevent sexual harassment in its workplace. But if acts constituting sexual harassment can form the basis for a finding of physical harm, it follows that Rainbow's duty to protect Pierce and Storlie from personal injury on these facts is coextensive with Rainbow's duty to prevent sexual harassment.

VI.

For the foregoing reasons, **IT IS HEREBY ORDERED THAT:**

1) Rainbow's motion for summary judgment is GRANTED in part. Pierce's and Storlie's claims against Rainbow for negligent retention and negligent supervision are preempted by the MHRA and accordingly are DISMISSED with prejudice.

2) Rainbow's motion for summary judgment is DENIED in all other respects.

3) Martinson's motion for summary judgment is DENIED in all respects.

Dated: August 20, 2001

DONALD D. ALSOP, Senior Judge
United States District Court

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500