UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AIMEE L. STORLIE, Civil No. 00-1817 DDA/FLN

Plaintiff,

vs.

**ORDER ON DEFENDANT RAINBOW FOODS GROUP'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL OR FOR REMITTITUR AND ON PLAINTIFF'S MOTION TO TREBLE DAMAGES**

RAINBOW FOODS GROUP, INC., a Nevada corporation, d/b/a Rainbow Foods, and JOHN ALBERT MARTINSON,

Defendants.

---

Nichols, Kaster & Anderson, by DONALD H. NICHOLS and PAUL J. LUKAS, Minneapolis, Minnesota, for Plaintiff.

Rider, Bennett, Egan & Arundel, LLP, by JOHN D. THOMPSON and PIPER L. KENNEY, Minneapolis, Minnesota, for Defendant Rainbow Foods Group, Inc.

---

This is an employment discrimination case. Plaintiff Aimee Storlie ("Storlie") alleged, inter alia, that her former employer, Defendant Rainbow Foods Group, Inc. ("Rainbow"), was liable to her for sexual harassment committed by another former Rainbow employee, Defendant John Martinson ("Martinson"). This Court denied Rainbow's motion for summary judgment on Storlie's federal and state statutory sexual harassment claims. Pierce v. Rainbow Foods Group, Inc., 158 F.Supp.2d 969 (D. Minn. 2001). Those claims were tried to a jury, which returned a verdict against Rainbow in the amount of $12,000.[1] The same jury then heard evidence on the issue of punitive damages and found Rainbow liable for punitive damages in the amount of $60,000.

Both parties have filed post-trial motions. Rainbow has moved for judgment as a matter of law with respect to both liability and punitive damages. A party is entitled to judgment as a matter

---

[1] The jury also found Martinson liable to Storlie for assault and battery under state law. Martinson has not challenged that result, and Martinson has not taken a position with respect to Rainbow's post-trial motions.

FILED JAN 0 9 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

of law if that party "has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a). Rainbow contends that Storlie's sexual harassment claims are time barred[2] and that the evidence does not support the jury's finding with respect to punitive damages. In the alternative, Rainbow has moved for a new trial on the issue of punitive damages or for a remittitur of the punitive damages award pursuant to Fed.R.Civ.P. 59, arguing that the jury's award was excessive as a matter of law. A new trial or remittitur is appropriate if the damages are so grossly excessive as to shock the conscience of the court. Foster v. Time Warner Entm't Co., LP, 250 F.3d 1189, 1194 (8th Cir. 2001). Storlie resists Rainbow's motions and requests a multiplication of the jury's compensatory damages award pursuant to the Minnesota Human Rights Act, Minn.Stat. § 363.071 Subd. 2.[3] For the reasons stated in this Order, the Court will deny Rainbow's motions in their entirety and will deny Storlie's request for a multiplication of compensatory damages. The Court also will order Rainbow to pay a civil penalty to the State of Minnesota in accordance with Minnesota law.

**Background**

According to the evidence adduced at trial, Rainbow received several complaints beginning in early 1996 about Martinson's behavior toward various female employees. Martinson received verbal warnings and written warnings in 1996 from Rainbow's store manager in response to complaints that Martinson was asking female cashiers for dates and making other unsolicited romantic advances toward female Rainbow employees. Kathy Pierce, another former Rainbow employee, testified that she was a target of Martinson's advances when she worked for Rainbow from 1997 to January 2000. Pierce testified that she repeatedly complained to her supervisors and

---

[2] Rainbow also argues that Storlie's claim for punitive damages is time barred. A claim for punitive damages does not state a separate cause of action, however, and the timeliness of such a claim is dependent upon the timeliness of the cause of action providing a predicate for the imposition of punitive damages.

[3] Storlie also has requested attorney fees and costs, and the Court will consider that request in a separate order.

to the store manager about Martinson's conduct, but Rainbow took no action to protect her from Martinson. Other female employees apparently also continued to complain to Rainbow about Martinson during the same time period. Rainbow did little to investigate these complaints, many of the complaints were not documented, and Martinson at no time received discipline from Rainbow more severe than a written warning.

Storlie, who began working for Rainbow in September 1999, was another target of Martinson's advances. Storlie testified that Martinson regularly asked her to hug him and otherwise paid inappropriate attention to her while she was at work. Martinson cornered Storlie at work in May 2000 and forcibly kissed her. Storlie quit her job at Rainbow, and Rainbow terminated Martinson's employment, following that incident.

**Statutes of Limitations**

Storlie's claims for sexual harassment are based upon the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. A plaintiff claiming an unfair discriminatory practice under the MHRA must file a lawsuit or an administrative charge "within one year after the occurrence of the practice." Minn.Stat. § 363.06 Subd. 3. A plaintiff under Title VII must file an administrative charge within three hundred days of the alleged discriminatory practice. 42 U.S.C. § 2000e-5(e). Storlie filed her Complaint alleging a MHRA violation on June 24, 2000, and filed a Title VII administrative charge on July 12, 2000.

Rainbow argues that Storlie's sexual harassment claims are time barred because there is no evidence that Martinson committed acts of sexual harassment within the applicable limitations periods or, even if he did, that Rainbow knew or should have known of such acts within the applicable limitations periods. This argument does not take all the evidence in the case into account. A sexual harassment plaintiff is entitled to bring a claim if any discriminatory act occurred within the limitations period. Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 572 (8th Cir. 1997) (Title VII); Costilla v. State, 571 N.W.2d 587, 593 (Minn.Ct.App. 1997) (MHRA), review denied (Minn. Jan. 28, 1998). This Court earlier held that Martinson's assault on Storlie alone could constitute a discriminatory act under federal and state law, Pierce, 158 F.Supp.2d at 973, and that assault

undisputedly occurred within the limitations periods applicable to Storlie's claims. A determination of a hostile work environment, furthermore, must be based on the totality of circumstances, Madison v. IBP, Inc., 257 F.3d 780, 793 (8th Cir. 2001) (Title VII); Goins v. West Group, 635 N.W.2d 717, 725 (Minn. 2001) (MHRA), which may include discrimination against or harassment of employees other than the plaintiff. Madison, 257 F.3d at 793. Contrary to Rainbow's suggestion, incidents of discrimination or harassment occurring outside the limitations periods are relevant to such a determination. Kimzey, 107 F.3d at 573. Given the history of complaints about Martinson and Martinson's assault of Storlie, a reasonable jury could have found that Storlie was subjected to a hostile work environment at Rainbow within the limitations periods applicable to her sexual harassment claims.

**Punitive Damages - Sufficiency of Evidence**

Rainbow puts forward a number of reasons for finding that it is not liable for punitive damages as a matter of law. Rainbow argues, first, that the actions of its agents were not sufficiently malicious or reckless to support an award of punitive damages. Rainbow also argues that its employees who received complaints about Martinson were not acting in a managerial capacity and that Rainbow made a good faith effort to comply with federal antidiscrimination laws, both of which in Rainbow's view are sufficient to insulate it from liability for punitive damages. The record does not support judgment for Rainbow as a matter of law on those grounds.

In order to receive punitive damages in a sexual harassment case under federal law, the plaintiff must show that the defendant employer "acted with actual malice or deliberate indifference" to the plaintiff's federally protected rights. Henderson v. Simmons Foods, Inc., 217 F.3d 612, 618 (8th Cir. 2000) (citation omitted). The terms "actual malice" and "deliberate indifference" "pertain to the employer's knowledge that it may be acting in violation of federal law." Id. (quoting Kolstad v. Am. Dental Ass'n., 527 U.S. 526 (1999)). The parties disagree primarily in their characterizations of Rainbow's response to complaints about Martinson. Rainbow notes that Martinson received warnings following some complaints and eventually was terminated after assaulting Storlie. These facts, in Rainbow's view, are indistinguishable from Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983

(8th Cir. 1999), in which the court held that an "excessive delay" in acting on the plaintiff's complaints, without more, could not render the defendant employer liable for punitive damages. Id. at 988. Storlie, on the other hand, relies on a line of cases upholding the submission of punitive damages to the jury when the defendant employer willfully ignored repeated complaints of sexual harassment. See, e.g., Madison, 257 F.3d at 795 (holding punitive damages appropriate when employer ignored, failed to investigate, and failed to document complaints); Howard v. Burns Bros., Inc., 149 F.3d 835, 844 (8th Cir. 1998) (holding that an employer's "turning a blind eye to repeated complaints of misconduct" supported award of punitive damages).

Although the question is close in light of the plaintiff's heavy evidentiary burden, a reasonable jury could have found Rainbow to be deliberately indifferent to Storlie's rights. The employer in Dhyne made at least some response to each sexual harassment complaint it received and terminated the harassing employee once his propensity to harass other employees became apparent. 184 F.3d at 987. Rainbow, in contrast, kept no documentation of sexual harassment complaints against Martinson, conducted only a cursory investigation of those complaints, and did not credibly discipline Martinson after Martinson continued to harass female employees despite Rainbow's warnings. Those facts support a finding that Rainbow knew of its duty to protect its female employees from Martinson and yet deliberately failed to act.

The other grounds Rainbow cites for setting aside the jury's punitive damages award have less merit. Employees complained about Martinson to store supervisors and managers, and Rainbow's company policy authorized store supervisors and managers to receive such complaints. Rainbow's contention that those persons who were aware of the complaints about Martinson were too unimportant to act in a managerial capacity therefore is disingenuous. And the fact that Rainbow had a written sexual harassment policy in place provides no good faith defense to a punitive damages award when, as here, the employer cursorily investigated complaints, failed to discipline the harasser in accordance with the policy, and otherwise failed to implement the sexual harassment policy in practice. Ogden v. Wax Works, Inc., 214 F.3d 999, 1010 (8th Cir. 2000).

**Punitive Damages - Amount**

Rainbow argues that the jury's punitive damages award of $60,000 is grossly excessive and thus in violation of Rainbow's constitutional right to due process as outlined in BMW of North Am., Inc. v. Gore, 517 U.S. 559 (1996). Rainbow's assertion that the constitution requires something less than a 5 to 1 ratio between punitive damages and compensatory damages is untenable in light of post-BMW cases upholding awards with significantly greater disparity. See Ogden, 214 F.3d at 1011 (citing cases). With respect to Rainbow's request for a new trial or a remittitur of the punitive damages award, the court must consider factors relevant to the reasonableness of the award, including the reprehensibility of the defendant's conduct and the ratio between the harm to the plaintiff and the size of the award. Callantine v. Staff Builders, Inc., 271 F.3d 1124, 1134 (8th Cir. 2001). The award the jury made in this case is not so unreasonable as to require reduction. Rainbow tolerated, and thereby tacitly encouraged, Martinson's acts of sexual harassment against a number of women over a number of years. Storlie herself suffered no economic harm from Martinson's conduct, but the jury found that Storlie's actual damages nevertheless were more than nominal. If the harm to Storlie arising from her contacts with Martinson was worth $12,000 in the jury's judgment, a punitive damages award of $60,000 based on all the evidence is not disproportionate or unconscionable.

**Minnesota Human Rights Act Damages**

The Minnesota Human Rights Act permits a trial court to award a prevailing plaintiff in a sexual harassment case "compensatory damages in an amount up to three times the actual damages sustained." Minn.Stat. § 363.071 Subd. 2. The trial court has virtually unfettered discretion in deciding whether to multiply damages, Phelps v. Commonwealth Land Title Co., 537 N.W.2d 271, 276 (Minn. 1995), and multiple compensatory damages are not duplicative of punitive damages. Id. at 277. The jury's total award of compensatory and punitive damages in this case, however, fully satisfies the interests of justice as it stands, and Storlie's motion to treble damages will be denied.

Finally, although neither party addressed the issue in its motion papers, Minnesota law requires a party found to be in violation of the Minnesota Human Rights Act to pay a civil penalty

to the state. Minn.Stat. § 363.071 Subd. 2. The Court finds that a civil penalty of $1,000 is appropriately assessed against Rainbow on these facts.

For the foregoing reasons, the Court hereby **ORDERS** that:

1. Rainbow's motion for judgment as a matter of law on Storlie's statutory sexual harassment claims is DENIED;
2. Rainbow's motion for judgment as a matter of law on the issue of punitive damages is DENIED;
3. Rainbow's motion for a new trial or for a remittitur on the issue of punitive damages is DENIED;
4. Storlie's request to multiply the jury's award of compensatory damages pursuant to the Minnesota Human Rights Act is DENIED; and
5. Rainbow shall pay $1,000 to the general fund of the State of Minnesota in accordance with Minn.Stat. § 363.071 Subd. 2 as a civil penalty for violating the Minnesota Human Rights Act.

Dated: January 9th, 2002

DONALD D. ALSOP, Senior Judge
United States District Court